

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00164-CV

**IN THE INTEREST OF W.T.**, A.T., R.T., S.B., E.B., Children

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. CVW2300095
Honorable Melissa Uram-Degerolami, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:     Liza A. Rodriguez, Justice
             Lori I. Valenzuela, Justice
             Lori Massey Brissette, Justice

Delivered and Filed: August 28, 2024

AFFIRMED

This case involves the termination of parental rights to five children [E.B., age 11; S.B., age 9; R.B., age 7; A.T., age 5; and W.T., age 4], three of whom are the children of both parents involved here and two more who are the children of the mother and a third party whose rights were previously terminated. At the time of removal, all five children were in the possession of D.B., the father of E.B., S.B. and R.B. Both Mom and Dad appeal the trial court order terminating their parental rights. They assert that the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1) and its finding that termination

is in the best interest of the children.[1] They also assert that the trial court wrongfully denied them a six-month extension to complete their family plan.

We affirm the trial court's order.

## BACKGROUND

The Texas Department of Family and Protective Services removed the children from Dad's care because of allegations of abuse and neglect. The Department was unable to place the children with Mom because she was unable to demonstrate the ability to safely house the children[2] which left them with Dad despite her knowledge of ongoing abuse. Notably, this was not the first time these children had been removed and placed in the care of the Department. The Department obtained temporary managing conservatorship of the children, placed them in foster care, and established a family plan of service for each parent. The service plans included service requirements for a drug abuse evaluation and recommended treatment, counseling, parent education, and domestic violence classes.

While the children thrived in foster care and expressed a fear of returning home, Mom and Dad failed to satisfy their service plans, completing only some of the requirements prior to trial. The trial court denied a request for an extension of time to complete their service plans and proceeded to trial.

After hearing testimony of seven witnesses, including investigators, the parents, and their caseworker, and the children's foster parent, and after considering all the evidence from the two-day trial, the trial court terminated both parents' rights to the children pursuant to Texas Family Code section 161.001(b)(1)(D), (E), and (O) and found that termination of their parental rights was

---

[1] Dad additionally asked for conservatorship of the children in the event his rights were not terminated. Because we affirm the termination of his parental rights, the issue is moot.
[2] Mom would not allow the Department to see where she was living and testified that she could not have the children with her where she was residing.

in the best interest of the children. The trial court appointed the Department as primary managing conservator, and approved the Department's permanency plan of allowing the children to stay in their foster care placement until they could arrange adoption. Mom and Dad appeal the trial court's order.

## DENIAL OF EXTENSION PRIOR TO TRIAL

First, both parents assert that the trial court should have granted their motions for extensions of time so that they could complete their family plans of service prior to trial. The trial court's ruling on an extension in a parental rights termination case is subject to review for an abuse of discretion. *In re M.S.*, 602 S.W.3d 676, 679 (Tex. App.—Texarkana 2020, no pet.); *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied).

In a parental rights termination case, the trial court must either commence trial or grant an extension prior to "the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator" or it loses jurisdiction and the case is automatically dismissed. TEX. FAM. CODE ANN. § 263.401(a); *In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). "The statute's clear preference is to complete the process within the one-year period." *In re A.J.M.*, 375 S.W.3d 599, 605 (Tex. App.—Fort Worth 2012, pet. denied) (en banc) (op. on reh'g).

To grant an extension, the trial court must find "that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE ANN. § 263.401(b); *In re M.S.*, 602 S.W.3d at 679. As indicated by the statutory language, "[i]n determining whether extraordinary circumstances justify a continuance, the focus is on 'the needs of the child.'" *In re J.S.S.*, 594 S.W.3d 493, 501 (Tex. App.—Waco 2019, pet. denied) (citing *In re A.J.M.*, 375 S.W.3d at 604).

"Actions that are 'considered to be the parent's fault' will generally not constitute an extraordinary circumstance." *In re O.R.F.*, 417 S.W.3d at 42 (quoting *In re G.P.*, No. 10-13-00062-CV, 2013 WL 2639243, at *1 (Tex. App.—Waco June 6, 2013, no pet.) (mem. op.)). Examples of circumstances that did not warrant extension in other parental rights cases have included a mother being incarcerated,[3] a mother entering rehab,[4] and a mother beginning compliance with the service plan too late to complete requirements prior to trial.[5]

Mom and Dad did complete some of the requirements prior to trial. Mom completed a parenting course, two domestic violence classes, a psychological evaluation, and an OSAR evaluation. Dad completed a psychological evaluation and a parenting class, and he showed proof of employment. He also submitted to his required drug tests, but those results were regularly positive for drug use.

Because drug abuse was a concern relating to both parents, both were required to complete a drug abuse evaluation and to follow any recommended treatment. Mom was first contacted to complete a drug abuse evaluation on April 25, 2023. She did not do so until almost six months later, on October 4, 2023. Based on the evaluation, she was referred to inpatient treatment. But, when she arrived for intake, she was rejected because she stated she was not using drugs and had not done so for three months. Mom completed a second evaluation on November 1, 2023, and was referred to outpatient treatment. She did not begin that treatment until December 29, 2023, less than thirty days before trial was set to begin on January 24, 2024. According to the Department, this pattern of delay was similar to that seen in prior removal cases involving the Department and the same children. Dad also waited until a month before trial to begin drug treatment and

---

[3] *In re M.S.*, 602 S.W.3d 676, 679 (Tex. App.—Texarkana 2020, no pet.).
[4] *In re J.S.S.*, 594 S.W.3d 493, 501 (Tex. App.—Waco 2019, pet. denied).
[5] *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied).

counseling. For the days that he missed counseling, he stated that work or the holidays precluded his participation.

Even though Mom and Dad's motions for extension of time to complete their service plan requirements were denied, they had a full month between the first and second day of trial to take further actions in compliance with their plans.[6] Neither Mom nor Dad took advantage of that time to continue treatment or counseling.

Based on the record, there is no indication that the children would have been better served by an extension of time for the parents to take action on their plans. We, therefore, cannot conclude that the trial court abused its discretion in denying the motions for extension of time. We overrule their first issues.

### FACTUAL AND LEGAL SUFFICIENCY REVIEW

Both parents challenge not only the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(D), (E), and (O), but also the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of the children.

### *Applicable Law and Standard of Review*

It is of constitutional importance when a trial court involuntarily terminates a natural parent's rights. *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* We must find that the Department proved, by clear and convincing evidence, that a statutory ground existed to terminate the parental rights and that termination is in the best

---

[6] The trial court heard evidence on January 24, 2024 and then reset the case to continue taking evidence on February 28, 2024.

interest of the children. TEX. FAM. CODE ANN.§161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263-64 (Tex. 2002). When performing a legal sufficiency review, where the standard is clear and convincing evidence, we must look at the evidence in the light most favorable to the factfinder's finding to determine whether a reasonable factfinder "could have formed a firm belief or conviction that its findings are true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); TEX. FAM. CODE ANN. § 101.007. For factual sufficiency, we look to the evidence contrary to the finding to determine if it would prevent a reasonable factfinder from forming the same conviction or belief. *In re J.O.A.*, 283 S.W.3d at 345.

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the weight and credibility of the evidence. *In re J.O.A.*, 283 S.W.3d at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

**STATUTORY GROUNDS FOR TERMINATING PARENTAL RIGHTS**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support terminating a parent's rights under section 161.001. *In re A.V.*, 113 S.W.3d at 362; *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). When, as here, the trial court terminates the parents' rights on multiple predicate grounds, we may affirm on any

one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

Mom and Dad challenge the trial court's findings on all three grounds, (D), (E), and (O). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code.").We turn to the law and the evidence supporting the trial court's challenged findings, beginning with grounds (D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

**Section 161.001(b)(1)(D)**

Under subsection (D), a parent's rights may be terminated if, before the child is removed, the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see In re R.S.-T.*, 522 S.W.3d at 108–09. However, "[a] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109; *accord In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The relevant period for review under subsection D (environment supporting termination) is the time period before the Department removes the child. *In re J.V.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

**Section 161.001(b)(1)(E)**

A parent's rights to their child may also be terminated if the trial court finds the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.). Under subsection E, the trial court determines whether the parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d at 110 (internal quotations omitted).

A parent's use of illegal drugs may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345. While our review under subsection D is limited to evidence of endangerment before the child is removed, a review under subsection E may involve evidence of a parent's course of conduct that occurs after the removal. *In re R.S.-T*, 522 S.W.3d at 109; *In re S.R.*, 452 S.W.3d at 360. Thus, "[a] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *10 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.)).

**Relevant Facts**[7]

Before the children were removed, the children lived with Dad because Mom could not house them. While Mom testified she knew Dad was abusing and neglecting the children, she did not report him to the Department because she feared retribution. She told a friend, hoping they would report his behavior, but did not do so herself. Right before the Department began its investigation, Mom physically attacked Dad in reaction to his abuse of W.T. in front of the children, which resulted in Mom being arrested.

According to an investigator for the Department, on one occasion Mom brought the children a dog with the intent that the animal could protect them from Dad. When she arrived, she found the RV in which they were living smelled of urine and feces. Dad blamed the youngest child, W.T., and then placed her in bathwater that was either too hot or too cold, to the extent it caused the child to scream.

The evidence further showed that Mom saw Dad place her children, W.T. and A.T. in a closet and that, because she left for work, she did not know how long they were in there. Mom was aware that Dad offered the children a vape pen containing THC to calm them. Mom stated that Dad would tie W.T.'s legs together and put her in the corner as a form of punishment and that he would not change the child's diapers for days. An older child, S.B., confirmed that W.T. would sometimes be in the corner for days and then would get spanked for having a soiled diaper. Mom told the caseworker she feared W.T. would die if she were left with D.B.

E.B. and S.B. disclosed that they had also been beaten and identified Dad as the primary abuser, but they said Mom also abused them when she was angry. The investigator noticed several visible indications of abuse. W.T. was underweight. Her legs were swollen and discolored (white,

---

[7] Here, for brevity, and because much of the evidence for these separate grounds overlaps, we consolidate our recitation of the evidence. *See In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

pink and purple). She had bruising on the soft parts of her cheeks, a V-shaped bruise pattern on her chest, a deep tissue bruise on her abdomen, and bruising on her back. She had severe diaper rash that extended to her mid-thighs and scaly skin on her abdomen, arms and legs – an indication of malnutrition. Dr. Spiller, who examined W.T., testified that she was malnourished to the point that her growth had become stunted, indicating long term neglect. A.T., as well, had bruising on her arms and legs. Dad blamed the siblings for W.T.'s bruises, blamed the diaper rash on Mom for the getting the wrong size diapers, and blamed her leg swelling and discoloration on a medical condition for which no evidence was offered.

The caseworker testified that both parents tested positive for drugs during the pendency of the case. Mom admitted to using marijuana and methamphetamines. Neither parent consistently participated in drug treatment or counseling as required by their service plans.

**Analysis**

The evidence shows that both parents engaged in conduct that endangered the children. While Mom testified that she feared retribution by Dad, she was unable to find a way to protect her children or to demonstrate an ability to house them apart from him. We are mindful of the position she was in, but the evidence shows that she let her fear for her own safety prevent her from taking action to protect her children despite seeing the kind of treatment detailed here. The evidence also showed that she too engaged in physical abuse of the older children. Both parents allowed the older children to witness the abuse and neglect of the younger children.

We conclude the trial court could have reasonably formed a firm belief or conviction that, before their removal, Mom and Dad knowingly engaged in conduct that endangered the children's physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) and (E); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d at 439; *In re J.T.G.*, 121 S.W.3d at 125; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, and because we overrule both parents' challenges to grounds (D) and (E), we need not address either parent's challenge to the finding based on statutory ground (O). *See* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

### BEST INTEREST OF THE CHILD

Both parents assert that the evidence was legally and factually insufficient to support the trial court's finding that terminating their parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). The Family Code statutory factors[i] and the *Holley* factors[ii] for best interest of the children are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child. We also consider the evidence we recited above pertaining to grounds (D) and (E) as we now review the best interest of the child under section 161.001(b)(2). *See In re C.H.*, 89 S.W.3d at 28 (noting that the same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2)); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

The trial court heard the following testimony.

**Children's Ages and Vulnerabilities**

At the time of trial, all the children were elementary school age or younger; none were able to care for themselves. As testified to by Dr. Spiller, each adverse childhood experience the children underwent, whether they were the direct victim or an observer, exponentially increased their risk of adulthood difficulties. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C)).

**The Parents' Drug Abuse**

Both Mom and Dad used drugs during the pendency of their case and neither was consistent with drug counseling and treatment. Both asked for extensions of time to complete their drug-related services, and both failed to maintain treatment and counseling during the month long delay between trial dates. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)). Further, the evidence showed that Dad provided drugs to the children on occasion to deal with their behavior and that Mom was aware of it.

**Indicia of Parent-Child Relationship**

The children expressed fear at the thought of being returned to Mom and Dad. They did not ask to see their parents during the pendency of their case with the Department. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

**Providing for Children's Needs**

At the time of trial, both parents stated they were employed, though the caseworker testified that Mom did not provide her paystubs. Further, Mom made no effort to maintain housing that could accommodate her children. Instead, she lived with her boyfriend and his family, and she would not allow Department employees to visit. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

**Children's Placement**

The evidence established that the children's foster mom was meeting all their needs. When they were first placed with her, R.B. seemed not to be properly bathroom trained, and none of the school age children had been attending school. She said it seemed that none of them had been instructed how to bathe or brush their teeth. The foster mom helped the kids establish healthy habits and routines; she helped them get caught up in school; and she provided them a safe and

stable place to live. W.T. gained weight. The children asked if they could call her "mom." She said they could if they felt comfortable with it. She said that she loved them and that they could stay with her as long as they needed to. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

### Ad Litem's Recommendation

The children's ad litem recommended that it was in the children's best interests to remain in their foster placement because they were happy, safe, and adjusting well. The ad litem felt it was important for the children to stay together in a placement where they could eat regularly and attend school daily. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in the children's best interests to terminate the parental rights of both parents. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (*citing In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

### CONCLUSION

For the reasons given above, we affirm the trial court's order.

Lori Massey Brissette, Justice

---

[i] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:
  (1)  the child's age and physical and mental vulnerabilities;
  (2)  the frequency and nature of out-of-home placements;
  (3)  the magnitude, frequency, and circumstances of the harm to the child;
  (4)  whether the child has been the victim of repeated harm after the initial report and intervention by the department;
  (5)  whether the child is fearful of living in or returning to the child's home;

(6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)    whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A) minimally adequate health and nutritional care;

    (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C) guidance and supervision consistent with the child's safety;

    (D) a safe physical home environment;

    (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

    (F) an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[ii] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A) the desires of the child;

    (B) the emotional and physical needs of the child now and in the future;

    (C) the emotional and physical danger to the child now and in the future;

    (D) the parental abilities of the individuals seeking custody;

    (E) the programs available to assist these individuals to promote the best interest of the child;

    (F) the plans for the child by these individuals or by the agency seeking custody;

    (G) the stability of the home or proposed placement;

    (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).